IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DOLORES DELEON MARTINEZ,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>MICHAEL J. ASTRUE, Commissioner of Social  )<br>Security,  )<br>)<br>Defendant.  ) | CV 08-6199-MO<br><br><br>OPINION AND ORDER |

MOSMAN, J.,

    Plaintiff Dolores Martinez challenges the Commissioner's decision denying her application for disability insurance benefits under Title II of the Social Security Act. I have jurisdiction under 42 U.S.C. § 405(g). I AFFIRM the Commissioner's decision.

    Mrs. Martinez alleged disability due to fibromyalgia, depression, and anxiety, with associated difficulty walking, aches all over her body, and fatigue. Admin. R. 10, 91. The administrative law judge ("ALJ") applied the appropriate regulatory determination process for disability claims under

1 - OPINION AND ORDER

the Social Security Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). The ALJ determined that Mrs. Martinez's ability to work was limited by obesity and a left knee condition. Admin. R. 12. She found Mrs. Martinez retained the ability to perform the work activities required in her past jobs as a teaching assistant and as a payroll clerk. The ALJ concluded Mrs. Martinez was not disabled within the meaning of the Social Security Act. *Id.* at 20-21.

The court reviews that decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1193 (9th Cir. 2004).

Mrs. Martinez contends the ALJ improperly assessed her residual functional capacity ("RFC") by failing to credit her subjective testimony and the medical opinions of David Irvine, M.D., Timothy McCarley, M.D., and Kim Jones, N.P. She argues these errors led the ALJ to elicit testimony from the vocational expert ("VE") with assumptions that did not accurately reflect her functional limitations and undermined the ALJ's determination that she retains the ability to work.

### A.  Credibility of Subjective Testimony

In the preliminary statement of her opening brief, Mrs. Martinez asserted that the ALJ "erred by failing to give clear and convincing reasons for rejecting plaintiff's testimony." Pl.'s Br. 1. Plaintiff's counsel did not identify which testimony was improperly rejected, the objectionable reasoning of the ALJ, or the bases of her objections. Plaintiff's brief does not provide any argument beyond the bare assertion of error. Despite this failure, I will attempt to review the ALJ's evaluation of Mrs. Martinez's testimony without the assistance of her attorney. *But see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (Declining to address an issue the plaintiff failed to argue with specificity in his brief).

Mrs. Martinez alleged she became disabled April 19, 2005, due to fibromyalgia, depression, and anxiety. Admin. R. 10, 91. She testified that she stopped working as a teaching assistant at that time because Dr. Irvine, her primary care provider, told her not to go to work for a while. She testified that she could not perform recess duties at school because walking outside on pavement made her feet hurt. She could not give 100% to her students because she was distracted by pain. *Id.* at 32. She performed some house cleaning and laundry on good days, but could only do a little bit at a time. She seldom went grocery shopping because of pain in her feet. On bad days, she could not do anything. She usually lay down to rest in the afternoon for an hour or so. *Id.* at 36-37. Mrs. Martinez testified that the main thing preventing her from working was constant pain, mostly in her feet. *Id.* at 38. Sometimes she had difficulty remembering recent events and concentrating. *Id.* at 39.

The ALJ accepted Mrs. Martinez's assertions of impairments limiting her exertional capacity to light work, excluding jobs requiring the use of ladders or scaffolds, or more than occasional stair climbing, walking on ramps, kneeling, crawling, or crouching. *Id.* at 13. The ALJ did not accept Mrs. Martinez's subjective statements suggesting she had functional limitations in excess of these and could not sustain work on a full time basis.

In deciding whether to accept subjective statements, an ALJ must perform two stages of analysis. The first stage is a threshold test in which the ALJ must determine whether the claimant has produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *Cotton v. Bowen*, 799 F.2d 1403, 1407-08 (9th Cir. 1986). If the claimant surmounts this threshold, the ALJ must proceed to the second stage, where he or she may discredit the claimant's

testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen*, 80 F.3d at 1283.

Here the ALJ found Mrs. Martinez failed to produce objective medical evidence of an underlying condition that could reasonably be expected to produce the symptoms she alleged. Nevertheless, the ALJ proceeded to the second stage and found Mrs. Martinez's statements about the intensity, persistence, and limiting effects of her symptoms not entirely credible. Admin. R. 13, 18. Mrs. Martinez did not challenge the first stage of the analysis, asserting only that the ALJ failed to provide clear and convincing reasons for rejecting her testimony.

In determining credibility, an ALJ may consider the objective medical evidence and the claimant's treatment history, daily activities, work record, and the observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; Social Security Ruling ("SSR") 96-7p, 1996 WL 374186. An ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).

The ALJ found the objective medical evidence did not reflect findings that were diagnostic for fibromyalgia. Admin. R. 13, 18. Mrs. Martinez asserted she received her fibromyalgia diagnosis from Dr. Irvine in May 1996. *Id.* at 32-33, 196, 208, 230. The earliest record Dr. Irvine provided to the Commissioner, however, was a disability letter from March 2006 which presupposed a fibromyalgia diagnosis. *Id.* at 199. None of Mrs. Martinez's physicians recorded diagnostic findings based on the tender point survey used to assess fibromyalgia symptoms. *Id.* at 18-19.

Even assuming a valid fibromyalgia diagnosis, the objective findings support an adverse inference as to the credibility of Mrs. Martinez's subjective claims. When nurse practitioner Jones

4 - OPINION AND ORDER

examined her, Mrs. Martinez endorsed tenderness even to palpation with minimal pressure. *Id.* at 211. When Claire Anderson, M.D., evaluated her, Mrs. Martinez exhibited giveway weakness in all muscle groups of the extremities and endorsed all control areas as well as fibromyalgia tender points. Dr. Anderson concluded Mrs. Martinez did not meet the diagnostic criteria for fibromyalgia, had a symptom magnification syndrome, and described symptoms which markedly outweighed the objective findings. *Id.* at 197. The ALJ relied on these findings of Dr. Anderson and nurse practitioner Jones in reaching an adverse inference as to the credibility of Mrs. Martinez's subjective statements. *Id.* at 17, 18.

In March 2006, Mrs. Martinez underwent evaluation for complaints of cognitive limitations secondary to fibromyalgia. For each suggested tool for management of memory problems and attention difficulties, Mrs. Martinez had a reason why it would not work. *Id.* at 206-07. This reasonably suggests an unwillingness to attempt measures designed to alleviate her symptoms. The ALJ also noted Mrs. Martinez did not diligently follow treatment recommendations designed to alleviate her pain. *Id.* at 19. Her medical providers instructed her that exercise was an essential component of her treatment and Mrs. Martinez reported feeling better with increased activity. *Id.* at 204, 205, 214, 217, 242-44, 245, 247, 248. Mrs. Martinez testified that she exercised regularly at home on a treadmill, including three times during the week of the hearing. *Id.* at 33-34. Her husband then testified, however, that they did not have a treadmill. He said they had owned a treadmill in the past but that it had broken down some time ago. *Id.* at 44. The ALJ reasonably drew an adverse inference as to Mrs. Martinez's credibility from the absence of clinical findings or a valid diagnosis and from her apparent lack of candor in her statements about compliance with treatment

recommendations. *Id.* at 19-20. *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001); *Batson v. Comm'r of Soc Sec Admin,* 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ's credibility determination is supported by inferences reasonably drawn from the record. Her decision provides an adequate basis for me to conclude that she did not discredit Mrs. Martinez's subjective statements arbitrarily. Accordingly, the credibility determination is upheld. *Orteza*, 50 F.3d at 750; *Batson*, 359 F.3d at 1193.

### B.   Medical Source Statements

Mrs. Martinez contends the ALJ improperly rejected the findings and opinions of Dr. Irvine, Dr. McCarley, and nurse practitioner Jones.

Dr. Irvine submitted a disability letter dated March 9, 2006, in which he opined that Mrs. Martinez was unable to engage in full time employment on a sustained basis without missing more than two days per month. Dr. Irvine indicated diagnoses of depressive disorder, fibromyalgia, chronic fatigue syndrome, irritable bowel syndrome, and restless leg syndrome. He stated that:

> "(h)er work limitations are definitely psychiatric in nature though her obesity, poor physical conditioning and osteoarthritis of the left knee would limit her from doing physical labor such as sustained walking, lifting, carrying, bending, stooping, climbing on any sustained basis."

Admin. R. 199.

The ALJ did not accept Dr. Irvine's disability opinion, but concurred in his assessment that Mrs. Martinez's exertional capacity was limited by obesity and left knee pain. *Id.* at 17-18.

An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another treating or examining physician, if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d

947, 957 (9th Cir. 2002) quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it only for clear and convincing reasons. *Thomas*, 278 F.3d at 956-57. Here, the ALJ found that Dr. Irvine's diagnostic impression and disability opinion conflicted with other evidence in the record. Admin. R. 17-18. For example, Dr. Anderson examined Mrs. Martinez and diagnosed only symptom magnification syndrome. *Id.* at 197. Contrary to Dr. Irvine's opinion that Mrs. Martinez's work limitations were "definitely psychiatric in nature," her psychiatrist Dr. McCarley, opined that her mood disorder was secondary to physical limitations restricting her activities. *Id.* at 230-31. Because of the conflicting medical opinions, the ALJ was required to explain why she discounted Dr. Irvine's disability opinion with specific, legitimate reasoning.

     The ALJ pointed out that Mrs. Martinez failed to produce treatment records or objective findings from Dr. Irvine showing he had a clinical basis for his diagnoses before submitting his disability letter. *Id.* at 17, 19. Indeed, the earliest document appearing in the record of this case from Dr. Irvine is the disability letter. Mrs. Martinez testified that Dr. Irvine had been her doctor since about 1991, diagnosed her with fibromyalgia in May 1996, and told her to stop working in April 2005. *Id.* at 32-33, 35. References to Dr. Irvine in the treatment notes of other health care providers corroborate that he had a treatment relationship predating the disability letter. *Id.* at 168, 172. 173, 175, 176, 178, 208, 228, 237. However, Mrs. Martinez asked the Commissioner to obtain medical records from Dr. Irvine covering only the period from March 10, 2006, and later. *Id.* at 240. Accordingly, any records that might have described the clinical basis of Dr. Irvine's diagnostic impression were not available to the ALJ and are not part of the record in this appeal.

The ALJ found the fibromyalgia diagnosis unsupported by the objective findings in Dr. Irvine's later treatment records from after March 2006. The Commissioner concedes that Dr. Irvine performed tender point examinations, but accurately notes that he did not record the findings or indicate whether he tested control areas. *Id.* at 240-49. Additionally, there is no indication in Dr. Irvine's treatment records that he was aware of Dr. Anderson's contrary finding that she did not meet the diagnostic criteria for fibromyalgia and exhibited symptom magnification syndrome.

Even if Dr. Irvine's tender point examinations supported a diagnosis of fibromyalgia, he did not make clinical or objective findings that would support the limitations in his disability letter. By its nature, fibromyalgia syndrome eludes measurement by objective evidence and the limitations it causes must be assessed by subjective reports from the patient. *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004). Under such circumstances, the credibility of the claimant is critically important. Dr. Irvine relied on Mrs. Martinez's subjective reports of her limitations. The ALJ found these reports undermined by her lack of credibility. Admin. R. 18. An ALJ is entitled to reject a treating physician's opinion that is premised primarily on subjective complaints that the ALJ properly finds unreliable. *Fair*, 885 F.2d at 605; *Tonapetyan*, 242 F.3d at 1149.

The ALJ pointed out that Dr. Irvine did not treat or diagnose chronic fatigue syndrome, irritable bowel syndrome, or restless leg syndrome. Admin. R. 17. Dr. Irvine did not provide clinical findings to support the inclusion of these conditions in his disability letter. To the extent Dr. Irvine's disability opinion was based on limitations from these conditions, the lack of clinical findings was a proper basis for discounting it. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999).

In summary, the ALJ provided specific, legitimate reasons for discounting Dr. Irvine's disability opinion. Her reasons are supported by substantial evidence in the record indicating that

Dr. Irvine did not make clinical findings to support his diagnoses and relied on Mrs. Martinez's subjective reports in his assessment of her functional limitations. Because her subjective reports were properly discounted, Dr. Irvine's opinion was also properly discounted.

Dr. McCarley performed an initial psychiatric evaluation in August 2005. His mental status examination was generally benign, but he noted Mrs. Martinez became tearful when discussing her inability to do things she had done in the past due to pain. Dr. McCarley diagnosed mood disorder secondary to fibromyalgia and started therapy with antidepressant medications. Admin. R. 230-31. After several weeks, Mrs. Martinez reported no improvement in her pain or depression. *Id.* at 227. Dr. McCarley indicated Mrs. Martinez would not be able to return to work for at least 3 months due to fibromyalgia pain, associated fatigue, and depression. *Id.* at 228.

Dr. McCarley continued to see Mrs. Martinez at 3-month intervals. In April 2006, Mrs. Martinez reported no change with antidepressant therapy. Dr. McCarley observed, however, that she appeared brighter and seemed to be doing better than he had ever seen her. *Id.* at 239. At about the same time, Dr. McCarley completed a Mental Residual Functional Capacity Assessment worksheet rating Mrs. Martinez's functional limitations in 20 categories of work-related mental abilities. He indicated Mrs. Martinez did not have the ability to function on a sustained full time basis in 7 of the 20 areas of function. *Id.* at 224-25.

Dr. McCarley opined:

> She is so consumed by her severe & chronic pain & resultant depression that she could not function in a work setting. She cannot attend to detailed instructions, as her memory has been impaired by her medications, depression, and her fibromyalgia.

*Id.* at 226.

9 - OPINION AND ORDER

Contrary to Dr. McCarley's opinion that Mrs. Martinez would not be able to understand, remember and carry out instructions on a sustained basis or maintain concentration and attention, Gale Smolen, M.D., found these abilities intact. *Id.* at 180, 224-25. Accordingly, the standard by which the ALJ was required to explain why she discounted Dr. McCarley's disability opinion was again by specific, legitimate reasons. *Thomas*, 278 F.3d at 956-57.

The ALJ pointed out that Dr. McCarley did not confirm the diagnoses underlying Mrs. Martinez's pain complaints and secondary depression through his own clinical testing. Admin. R. 17. Instead, he relied on Mrs. Martinez's subjective reports with respect to both the underlying diagnoses and the resulting functional limitations. The ALJ also noted that Dr. McCarley's initial mental status examination showed she was alert, oriented and able to attend well to the interview and his later observations showed improvement. *Id.* at 15-17. This reasonably suggests his disability findings were not supported by his own clinical observations but relied primarily on Mrs. Martinez's subjective reports.

The ALJ found the psychodiagnostic examination performed by Dr. Smolen more persuasive because she used clinical measures to conclude that Mrs. Martinez retained the ability to remember, understand, concentrate, and attend. *Id.* at 14-15, 180. In addition, the ALJ gave weight to the findings of the agency psychological consultants. *Id.* at 15. In January 2006, Paul Rethinger, Ph.D., reviewed all the evidence in the record and concluded that it did not demonstrate any severe mental impairment. *Id.* at 182, 185, 194. In April 2006, Frank Lahman, Ph.D., reviewed Dr. Rethinger's assessment and all the evidence in the case record and concurred with Dr. Rethinger. *Id.* at 219.

The ALJ also found it significant that Mrs. Martinez complained primarily of a condition which Dr. McCarley did not treat, *viz.* pain in her feet, and not psychiatric impairments. *Id.* at 15.

This again suggests that Dr. McCarley's disability opinion was not based on his own clinical findings, but on Mrs. Martinez's subjective description of her functional limitations and reports of treatment provided by others. The ALJ reasonably concluded that Dr. McCarley's opinion was undermined by Mrs. Martinez's lack of credibility. *Id.* at 16. *Fair*, 885 F.2d at 605; *Tonapetyan*, 242 F.3d at 1149.

Nurse practitioner Jones examined Mrs. Martinez in February 2006. Admin. R. 208. The evaluation consisted of a fibromyalgia-focused interview, questionnaire, and physical examination. *Id.* Jones reported diagnoses including fibromyalgia, chronic fatigue syndrome, irritable bowel syndrome, diverticulosis, gastroesophogeal reflux disease, osteoarthritis of the left knee, restless leg syndrome, and plantar fasciitis. *Id.* at 212. Mrs. Martinez indicated her three main symptoms, pain, fatigue, and disrupted sleep, were equally bothersome. *Id.* at 210. On physical examination, Jones obtained generally normal findings, except that Mrs. Martinez endorsed all 18 out of 18 tender points on the fibromyalgia tender point survey with minimal palpation. *Id.* at 211. Jones did not make findings for validity testing of control points.

The ALJ did not accept Jones's diagnoses because she was not an acceptable medical source under 20 C.F.R. 404.1513(d)(1). Admin. R. 18. Evidence from an acceptable medical source is required to establish the existence of a medically determinable impairment. 20 C.F.R. 404.1513(a); SSR 06-03p, 2006 WL 2329939 at *2. Without a proper diagnosis by an acceptable medical source, a claimant cannot establish a medically determinable impairment. *Ukolov v. Barnhart*, 430 F.3d 1002 (9th Cir. 2005). The ALJ correctly pointed out that no acceptable medical source recorded a diagnosis of chronic fatigue syndrome, although Mrs. Martinez complained frequently of fatigue.

Other medical sources, such as nurse practitioners, who are not "acceptable medical sources" under the regulations, may provide opinions on the severity of an impairment and its functional effects. Such opinions are important and must be evaluated in the decision-making process. SSR 06-03p, 2006 WL 2339939 at *3. If Jones had offered an opinion as to the severity of Mrs. Martinez's impairments, their functional effects, or their impact on her ability to perform work-related activities, then the ALJ would have been obligated to explain the weight given that opinion. *Id*. at *5. Jones did not offer an opinion on those matters, limiting her report to her diagnostic impression and recommended therapies. Accordingly, there was no error in the ALJ's evaluation of Jones's report.

The Social Security Act places the burden of producing evidence and proving the functional limitations that make up the claimant's RFC on the claimant. 42 U.S.C. §§ 405(g), 423(d)(5); *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir. 1995). The ALJ considered all the evidence Mrs. Martinez produced and found it did not support the functional impairments she claimed. Mrs. Martinez's objections to the ALJ's evaluation of the evidence cannot be sustained for the reasons already given. The court must uphold the Commissioner's findings of fact if they are supported by substantial evidence, even if the evidence can rationally be interpreted in a way that supports the claimant's assertion of additional limitations. *Andrews v. Shalala,* 53 F.3d 1035, 1039-40 (9th Cir. 1995); *Morgan v. Commissioner*, 169 F.3d 595, 599 (9th Cir. 1999).

## CONCLUSION

For the foregoing reasons, the court AFFIRMS the Commissioner's final decision.

DATED this   9th   day of November, 2009.

                                              /s/ Michael W. Mosman
                                              Michael W. Mosman
                                              United States District Judge